The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nine, give their attention, for the court is now sitting. God save the United States and this Honorable Court. Thank you, please be seated. Today is Ward v. AutoZone. Is it Ms. Kern? All right, we're ready to hear from you. Good morning. We're here today following a jury trial that was held last year in New Bern, North Carolina. There was an adverse verdict against my evidentiary issues. There are also cross appeals. If it pleases the court, I'll start with the evidentiary issues of the allowance of evidence. Let me make a suggestion to you. Of course, it's your time, but you can use as you want, but I think the panel is familiar by virtue of the briefing and the record with the evidentiary issues and the jury instructions. So what might be most fruitful is if you could address the punitive damages, the issue of double recovery, and lacrosse appeal. Yes, Your Honor. With regard to the punitive damages, there are really two issues. One that I know is hotly disputed, and that is whether or not the individuals that are accused of wrongdoing were high enough up in the food chain, if you will, to impute vicarious liability upon AutoZone. It is our position that they do not. There are three actors at issue here. Wanda Smith, who is a very low-level manager. Then there was a store manager, Wayne Tarkington, and a district manager, Kenneth Geer. And it's our... The jury was charged on how to determine that level, and there are three things they had to find. Employedism in a managerial capacity, acting scope, the course of employment, and reckless indifference. Yes, Your Honor. That was submitted to the jury as a factual issue. Well, Your Honor, we dispute. We move for J and O B because we felt like there was not enough evidence developed at the trial to meet either the level of supervisor or manager required to go to the jury for any of the actors, much less conduct that would rise to the level to impute punitive damages. The evidence that was developed in the record was that Ms. Wanda Smith really had no supervisor or managerial authority. Mr. Tarkington did not as well. None of these individuals could fire, promote, demote, or really significantly influence any employment decisions. And the only questionable manager here would be Kenneth Geer. He was the district manager. Now, he still did not have the authority... Even if... Correct. Even if you knock out one or two, you still got... And I do agree with that. I absolutely agree with that. But for... So in going through the analysis, it's our position that Ms. Smith clearly does not qualify as a manager under Kolstad or any of the other cases that have come out since Kolstad. Let me... I understand those arguments. And this is not to suggest I've made my point, but assume there is sufficient managerial level capacity that is shown. Does satisfying the necessary managerial level for purpose of imputation of damages? In other words, could you have an employee who does constitute a manager who's nevertheless not high enough that for the good faith exception that those are different issues? Well, they are different issues. It's a four-step analysis as set out in Kolstad and the cases that follow. And satisfying the first three, which would be the scope of employment in the face of a perceived risk, was the managerial capacity there, scope of employment, then it allows the employer to then assert the... It's our affirmative defense to show that we, in good faith, sought to comply with the law. And in this particular case, even if the other prongs were satisfied, we're still able to present our affirmative defense. And we think that there's a breakdown there as well. Because if you look at the individual actors, and let's just say for purposes of our argument today, that all three individuals were managers, which we hotly dispute, that their actions would still not constitute malice in the sense that punitive damages would be ensued. I mean, essentially AutoZone had a policy in place, which it disseminated to its employees, a complaint procedure with several avenues of complaint. The testimony was, by Mr. Ward's own witness, Mr. Tarkington, that he received one complaint, and that was of horseplay, which he addressed it. He mentioned to Mr. Gere that he had an issue, didn't say anything beyond an issue of horseplay. So there's really no knowledge on the part of Mr. Gere. So what we're really left with is one act by Mr. Gere. And that is the plaintiff's testimony, Mr. Ward's testimony, that Mr. Gere, after he had been terminated, made a comment such that, this is all your fault. And that one comment certainly does not rise to that. I mean, that's your argument, I understand, but that there was testimony of complaints, at least three instances of complaints, to Ms. Smith, then to Mr. Tarkington, then later to, I think, Smith and the other, and perhaps more. And I realize your argument may be that, except for Mr. Gere, those others don't meet. They don't meet the requirement of being a manager, but there are several cases that also say that simply, you know, failing to conduct an investigation does not rise to the level to impute or... What would be the basis of that? As I read Kolstad and Lowry, that the malice and recklessness requirement is really whether the defendant might reasonably know that the conduct could constitute a violation of federal rights. It's not how egregious the conduct is. It's to their state of mind. Well, and that is one prong, and that is... I hadn't asked my question. Oh, sorry. And do you dispute that Aldo Zone had any question that, you know, that sexual harassment was a violation, potentially, of federal rights? That's not really contested, is it? That is not contested, no. I mean, I think that that would also defeat our good faith argument in an effort to comply. Let me make sure. You're arguing now as to liability or punitive damages? Well, the liability for punitive damages. I mean, we don't think that punitive damages should have ever gone to the jury for the two reasons that I articulated earlier, which was that none of the individuals that were accused of wrongdoing met the manager test under Kolstad and the other cases ensuing, and that our good faith, we're allowed to assert our affirmative defense. Let's go back to that point. Okay. Just being able to hire and fire is not despot, despotitive in my mind. They could send people home from the shift. They could take complaints, those kinds of things. Isn't that a managerial function? But not a higher managerial function, which we believe is required under even Kolstad. And let me for a minute talk- How much higher up the chain of command would you say in AutoZone's corporate structure would you have to go to find a higher management person? I would say at the very least, it would be the position above a store manager, which would be a district manager. But even- Do you have that here? We do. Mr. Gere was a district manager and is the district manager accused of really one thing, and that was making a comment to Mr. Ward in the car that the harassment was his fault after Mr. Ward had resigned. Because the only other action attributed to Mr. Gere was that he failed to act on a complaint, but Mr. Ward's own witness testified that the only quote, complaint that was made to him was there was an issue in the store. So Mr. Gere should not be charged based on the record evidence of having any type of actual or constructive knowledge of any sexual harassment. And it's undisputed that Mr. Gere did visit the store, you know, two or three times a month, and Mr. Ward never mentioned anything to him. Now, Mr. Gere was Mr. Tarkington's supervisor, so one would think that if you weren't getting any relief by Mr. Tarkington, that you would then go to Mr. Gere, which Mr. Ward did not. Well, let me, here's something that troubles me about this case. Okay. Parties really didn't address, I don't think, in any significant way, and that is that there doesn't seem to be much daylight between the finding of seems like to me, most of your argument is going to an underlying liability factor. What I'd be particularly interested in is what's the differentiation between the compensatory damages and the punitive damages? Well, punitive damages are just that. They're penal. They're meant to punish. So they're high. What I'm looking for is based on pleadings, jury instructions, evidence, what would justify compensatory damages, but not punitive damages? Well, the compensatory damages, and there was a finding of a hostile work environment by the jury, and that he complained. The jury believed that he complained and he was subjected to a hostile work environment, which would be sufficient to impute compensatory damages. But for punitive damages, there's got to be another level of recklessness, malice, by those in the corporation that can bind the employer for such a harsh remedy. And if you look at, for example, in Vance, Vance was very particular in what actions or what level of management it would take to bind a corporation for vicarious liability. For Title VII purposes, in terms of your quantum of proof, if I'm correct, you only need to prove by preponderance for Title VII purposes. But for the state claim, as I understand North Carolina law, you have to meet a much higher threshold, clear and convincing. So is your argument that even if there is sufficient evidence for a finding of state law compensatory damages, it does not rise to the level of clear and convincing? Absolutely. And that's why there are two different sets of damages. And the burden of proof to establish punitive damages is much higher because it is penal in nature. But the burden of proof, to Judge Agee's point, I think the burden of proof for punitives under Title VII is preponderance.  So that's not a higher burden of proof. There may be additional elements or additional evidence that is required. North Carolina law has not only the requirements of punitive damages, but a higher level of proof. Correct. That is correct. That is correct. And here, and I guess to your point, the elements are lacking here as far as the actions that would impute punitive damages to the company in this particular case. And that's what we dispute. I mean, if there was no differentiation, then when a plaintiff is awarded compensatory damages, they would always be awarded punitive damages. And that's not what the law says, and that's not what the law is. It sounds like on that point, we have some other issues we need to get to. Your main issues there are the level of manager and the good faith exception. Yes, Your Honor. All right. Why don't you tell us why you say there's a double recovery here? There are, first of all, there was one set of facts, one, quote, incident, if you will, and that was the sexual harassment, which led to the damages. And there are a number of cases that we cited in our brief which says you can have parallel actions, but however, if the conduct for which you're the same incident, which it is here, it's the harassment, then that would constitute double recovery. And we cited, for example, the Eschert and Wallia cases where an employee sued under Title VII as well as a state tort claim of battery and or IIED. And the court held in those cases that there was double recovery because there was a single incident which led to the damage, the damage being compensatory. The judge charged the jury that there was emotional distress under one theory and then severe emotional distress under the other. My question is, are they subsumed or are they, in fact, two different sets of damages? We believe that they're one set of damages. There's the emotional harm that resulted from the alleged harassment. And it was one, again, cause of action, one, injury, which led to the emotional distress. You know, that may be. I understand that when I read the evidence and I looked at this pretty hard and I didn't see a whole lot of argument from the plaintiffs about different damages, but isn't, number one, aren't we required as an appellate court to look for any way to harmonize the verdict form with the law? So we're not really just reviewing that again. And isn't it possible that the jury felt they were all sufficient to meet the severe standard and simply divided them up? And if that's the case, are we required under Atlas Food and other cases to, you know, construe it in a way that would be consistent with a single recovery? Well, I think that the line of cases that we are relying on is, well, first of all, because there was a recovery of compensatory damages under Title VII and impunity damages under Title VII is very, you know, specific in its caps, that it would be inappropriate then to, you know, adjust the award such that it would go beyond the caps for a state law claim. But in this particular case, again, I get back to it's one injury, it's the same injury, and there is double recovery. There are a number of cases that so state. I think I'm out of time. I'm not sure. I don't think so. What I'm really trying to get at is I understand your argument about double recovery. Yes. But is it not possible that the jury could have viewed all the damages sufficient to meet the intentional infliction of emotional distress standard and simply allocated them to each claim? That's Mr. Ward's argument, and I understand. Why is that not possible? It is possible. Well, if it's possible, are we then not required to accept that possibility under Fourth Circuit law? Because there are Fourth Circuit cases that say for the same injury, you can't have double recovery. And again, I get back to the injury is the emotional distress damage caused by the one single act. Okay. You've got some time left on rebuttal, but before you go, 30 seconds or less with regard to the cross appeal, why haven't the recent Supreme Court decisions in our cases resolved the constructive discharge claim? Well, first of all, we've got two arguments on that, the first being that even under the Supreme Court, the Green case, there's still the objective intolerance or intolerability, the facts that existed at the time of Mr. Ward's. Which the district court never got to. But it's a de novo review in this particular case because it was a summary judgment. And we don't believe that the level of the conduct of which he complained at the time that he resigned from a reasonable person standpoint would rise to the level to cause him to resign. With regard to the deliberateness, I understand what Green said. There are conflicting Fourth Circuit cases that still seem to suggest that there is a deliberateness subjective standard. Yes, Your Honor, there have been. And we've cited them in our brief, but there's the Melendez case, the LaCoste case, then there is a district court case of Bailey, and these were all in 2017, 18, and 19, and they're cited in the brief. All right. Thank you very much. We'll hear from you on rebuttal. Ms. Holding, and when your time is up, Mr. Kovnat will present. Yes. Okay. Good morning, Your Honors. May it please the Court. I'm Rebecca Holding from Friedman and Holding on behalf of Mr. Ward. And as the Court's noted, we've ceded six minutes of our time to the EEOC attorney today. They will primarily be discussing the punitive damages under Title VII as well as the constructive discharge, although, of course, I'm happy to answer any questions along those lines. I did, if I could, want to jump in very quickly on the double recovery issue. I think it's true that the jury's award should be harmonized. The standard of review is very high. It's abuse of discretion. And in this case, there were emotional distress damages that the jury awarded $100,000 for under Title VII, did not require a showing of severe emotional distress for the intentional infliction. Let me ask you about that, because that's a, I mean, in theory, I think I understand your argument. But when I look at the pleadings and the jury verdict that reflected the instructions, I'm somewhat troubled by the wording there that doesn't seem to quite jive with your argument. Because when you look at the pleading for what's the actus reus of the Title VII claim, it's creating a sexually hostile work environment. That's JA 27, paragraph 54. And you see the identical language in the state intentional affliction claim on the And when you look at the measure of damages, they're the same in both counts, verbatim. Suffered severe emotional distress. So while I think you can certainly get a double recovery in a Title VII arena, here it seems to be based on exactly the same pleading liability and exactly the same claim for damages. And then when you look at the jury verdicts, when they come back and answer questions one, two, and three under hostile work environment, and then get to question 11 on intentional infliction of emotional distress, they seem to be following exactly the same line. And that's what troubles me in terms of the double recovery, that there just doesn't seem to be any daylight between the two claims. Well, I would say this. In the jury instructions, to which there was no objection from AutoZone in terms of what was required to be demonstrated to be awarded compensatory damages under Title VII versus what was required in terms of showing severe emotional distress under intentional infliction, they were clearly, the jury was clearly instructed that you had to show something additional under intentional infliction. And it was a neurosis, psychosis, chronic depression, phobia, severe and disabling emotional mental condition recognized by a professional, it's a high standard of proof. That is not what the jury was instructed for the Title VII claim, and we can see reflected in the jury's award, $100,000 under Title VII versus $150,000 for the intentional infliction. What's your best basis in the record to show there was a differentiation? Well, in terms of what the basis for the award would be, you could have Dr. Goldstein's testimony diagnosing him. Well, obviously you've got to have a different quantum of evidence to reach the higher threshold for punitive damages in particular, but also under the state law claim to step up for intentional infliction of emotional distress, which I'm pretty sure the AutoZone did not contest, at least not on appeal, the sufficiency of the evidence as a matter of law to show that that's a valid state law claim. That was their choice, so they didn't raise it. However, the fact that there is testimony that could show both quantums of damage doesn't necessarily show that the jury was instructed on why there would be two different measures of damages between the two claims. So when I look at the special verdict form, I'm not finding that. Maybe it's there and maybe I've just overlooked it, but that's what, to me, it's not a question of well, is there additional evidence that goes to the higher level for the state claim. I'm more concerned with, well, what did the parties argue and why would the jury have thought that in awarding the recoveries that severe emotional distress for the state claim simply included as a subset the damages that had been awarded for, for lack of a better word, regular emotional distress. You see kind of the logical conundrum that comes up there? I think I do, but I would say a few things. Number one, AutoZone didn't object to the verdict sheet, which allowed the jury to award damages, compensatory damages, under both Title VII and the intentional infliction claim. Secondly, the jury was instructed separately as to the burdens of proof for both claims and what level of distress we had to prove in order to justify the second award. And the jury is presumed to have followed the judge's instructions and made an award based on those instructions. And we see from the award and from the fact that there was severe emotional distress as reflected with the panic attacks, the diagnosis of anxiety. So in your view, if the burden of proof is differentiated, that's sufficient to show that there's not a double recovery? I think in this case it is, Your Honor. And I would also again point out that AutoZone didn't request an instruction for the juries reminding the jury that there should be no double recovery or that... Does it matter that, I mean, again, in reading particularly the closing, there was no argument that here are damages for intentional infliction of emotional distress, here are damages for Title VII. There didn't appear that the plaintiff made any attempt to distinguish between those two. We didn't... In closing, we didn't say award this much for Title VII, award this much for intentional infliction because under the intentional infliction, this is where your severe emotional distress lies. We did argue that it was as appropriate, in my opinion, that it's up to the jury to decide on the amount of damages based on the jury's, the jury instructions, which were correct. Can I switch gears and ask if this is... I'll happily answer any questions. If you say this is supposed to be your colleague, I'm fine to hold it off, but I want to ask you about the constructive discharge claim. Is that what you intended to talk about? Either one of us can talk about that. That's fine. Thank you. So let's assume we believe that the trial court erred in requiring deliberateness. What, number one, are you seeking damages for constructive discharge separate and apart from what you argued for your other claims? If the jury's verdict is upheld as we believe it should be, there aren't any additional damages that Mr. Ward would be entitled to except some perhaps minimal back pay award or lost pay award. We'd like the standard to be corrected and the... Well, I mean, have you, look, have you asked for lost wages in constructive discharge? To be honest, I believe we did in our complaint, but since it wasn't litigated in the trial, it wasn't evidence that came out at trial. You can get lost damages for constructive discharge, but you can't for Title VII emotional hostile work environment. That's right. The only, I mean, I want to make sure I understand what you're asking. Sure. Are you just trying to have the law clarified or if, because if we were to agree with you that it was wrong, then, you know, then we got to decide what that means. And do you want a new trial? Well... And then our question is, do we, do you want a new trial for the whole case? Because there's an issue of whether you should get just a flyer on one claim without the dynamics of both of them. So I want you to, if you could be real clear as to what you're asking for with your appeal on the constructive discharge, because that's, those are some issues that concern me. Sure. Well, first of all, as we've said in our briefs, we believe that the jury's verdict, the jury verdict should be sustained. So we are not asking for a new trial on any of the other claims. We would, assuming that occurs, in other words, that the district court verdict is upheld, the jury's verdict is upheld, we do not want a new trial solely on constructive discharge. Just... I'm sorry. So if you prevail and AutoZone loses, why do we need to reach that given the Title VII statutory cap? Assuming that the jury's verdict is upheld, we don't, we don't need to reach it. We think that the law, as stated in the district court's opinion... Wouldn't that be an advisory opinion? I mean, if you've basically disclaimed any differentiation and damages and there's already a cap, how can we render an opinion that has no effect? Well, one point of clarification... What's the case in controversy then? So I just want to clarify one thing. If for whatever reason, you know, the court reversed either because of an evidentiary issue and sent the case back for a new trial on those grounds, which, you know, we don't think should happen... Well, let's just assume you get to keep your Title VII damages. Okay. In your constructive discharge claim over the... I mean, you can't get anything else, can you? That's true. The only thing we could get would be the lost pay and we would not seek a new trial for that purpose. It sounds like what you're saying is if we are to reverse and order a new trial on other grounds, you want to get constructive discharge under that circumstance. Is that correct? Exactly. I understand. Yeah. Thank you. Were there any other questions on that? Okay. I just have 30 seconds left. I just want to reiterate, as well, on the double recovery issue that Title VII does explicitly permit and states that it's not displacing any separate tort claim or other state law claim. And the punitive damages... Excuse me. One of the questions that came up, I believe, for Ms. Kern was sort of the daylight issue between compensatory and punitive damages. And I just want to make clear, AutoZone didn't challenge any entitlement to compensatory damages per se for the intentional infliction claim. But so for the court's purposes, it's really just was there evidence to support the punitive damages claim under intentional infliction and Title VII. I see I'm out of time. But what is... Do you mind if I follow up on that, please? But what is... I understand they may not have challenged the sufficiency of evidence for the North Carolina state law claim. But what's the difference? That is, what must a plaintiff show to obtain Title VII punitive damages that is different from what they must show to obtain compensatory damages? Under Title VII? Yes. Well, for Title VII, the compensatory damages, I mean, as long as you've shown that there's a hostile work environment for which AutoZone can be held liable through negligence, that's sufficient for the emotional distress award, as long as there's some testimony that there was emotional distress. In terms of the punitive damages, you have to show, as Ms. Kern talked about as well, the recklessness by somebody with managerial authority. Those are different... But is it simply, is it enough to show that it was intentional, which it almost always is going to be absent of the desperate impact claim, and that they knew it might be a violation of federal law? Is that really? Because that's all but no daylight, isn't it? Well, here they've also shown that the managers are taking some... They're engaging in some kind of conduct that then warrants the punitive damage award that is in addition to, or somewhat separate from, whether they're liable in negligence. In this particular case... You're talking about the Title VII claim. Yes, we are. Which I think Judge Quill about it. Here you have evidence that both goes to the negligence, but is not necessary to prove negligence. So in other words, Wanda Smith laughing at Mr. Ward when he makes complaints. She's telling him he complains too much. She's saying, maybe if you just gave in to him, this would stop. When Mr. Geer is saying, well, it's all your fault. You're a big boy. You should have been able to stop that. That evidence isn't necessary to establish liability for the compensatory damages, but it certainly helps. But it is relevant to the punitive damages award, if that answers your question. So I think you're saying the intent and the knowledge... I understand your evidence about the facts. I'm just really talking about as a matter of law, what is different. But I think you've answered it. Okay. Thank you very much. Thank you. Mr. Kovnat. Good morning, Your Honors. And Ramon. Which of the issues you're going to address? Well, I'll very briefly talk about the constructive discharge issue, just because we talked about it in our brief. I don't want to spend much time on it. But as Judge Agee and I think Judge Qualdobom recognized, the Green v. Brennan case establishes that deliberateness is not required to establish constructive discharge. You just have to show objectively intolerable working conditions. And from the EEOC's perspective, we're not interested in what happens after remand. I think there's some lingering confusion in district courts within this circuit, as well as some unpublished decisions that Ms. Kern mentioned, that have restated an incorrect standard that requires deliberateness. And so the EEOC is just hoping to clarify. What you say is correct. I'm sorry? Let's assume everything you say is correct. Right. Based on previous counsel's discussion with the panel, it would appear that she concedes that there's no relief that can be given here, and that there would be no trial if it went back. So that just strikes me as purely an advisory opinion, which we don't have the authority to issue. I understand. And the reason it's not an advisory opinion is that back pay is a separate category. It's an equitable form of relief, whereas the compensatory and punitive damages fall under the statute, Section 1981A. So it's a theoretical basis for damages. Whether they did discovery on back pay in this case, I don't think they did. So I agree that, as a practical matter, it doesn't mean much. But I do think that the law should be clarified. I would like to discuss punitive damages, and really jumping in with this managerial capacity standard. So Kohlstadt is the case that created it. And it defines the standard as saying someone must be important, but perhaps not top management, an officer, or director. You're talking now about the Title VII punitive damages. Correct. So I'm sorry for jumping so quickly over. This is for punitive damages under Title VII. And it's really the standard of manager that is required to impute liability for punitive damages to an employer. Well, Kohlstadt, they've been using the word hire managerial agents. That case doesn't use the word hire. So what is it? That's correct. So throughout this case, AutoZone has sort of placed this word hire into the language and jury instructions. And throughout the briefing, the word hire never appears in Kohlstadt. It does not appear in Lowry, which is this court's decision, which elaborated on Kohlstadt. So again, the standard in Kohlstadt says that someone must be important, but perhaps not top management, an officer, or director. Which, to be sure, is ambiguous, because it uses the word perhaps. But Lowry then elaborated on that standard and held that the ability to take hiring and firing decisions, to oversee a department, to make suspension decisions, to, you know, things that qualify someone just in kind of a common sense way as a manager, those are- Sending them home from the shift. That's correct. And there's evidence here that Smith could do that. Does that count? It counts under Lowry, which actually relied on this EEOC versus Walmart case as the Tenth Circuit decision, which held that the ability to suspend is enough. And so- Is that the assistant manager case? I can't remember. That's correct. That kind of went pretty far down the food chain. That's correct. And I- Following up on that point, I appreciate your arguments on that issue. I had asked defense counsel earlier, Lowry seems to distinguish the level of employee that is necessary to establish, you know, imputation for punitive damages from the level of employee who is involved in the good faith defense to punitive damages. When they talk about- So I'm switching gears to the good faith defense. In Lowry, they talk about all the policies, which Aldo's own has comparable policies here. And the evidence that was presented in Lowry was that some very high up people had a, you  know, good faith attitude and that the plaintiffs felt intimidated to taking advantage of the policies. And we don't have anywhere near the level of seniority exhibiting flippant type attitudes. There may be evidence of those here that are lower level, and we don't have any evidence that Mr. Ward felt, you know, intimidated about making complaints, I don't think. So good faith, you know, is the issue I'd like you to address, because it seems to talk about different levels of employees for that issue. Right. And I think the best way to think about the good faith defense is really to think about- First of all, it's a defense, so the burden of proof is on the employer to show that it, the entity, the principal, whatever it is, the corporation, did everything it could to comply with Title VII. And that there were these rogue managers, effectively, that ignored all this overwhelming, you know, training, you know, this inculcation, essentially, that everything the company stood for was to prevent sexual harassment or prevent discrimination. And that, so the managerial capacity- Where are you getting that language from? Well, I think it's- That's a good argument, but I didn't see that in the cases. I mean, I don't think Lowry focuses on the level of management. My red light is on. Do you mind if I continue? No, go ahead. Okay. Lowry doesn't, for the good faith defense, doesn't focus on the level of manager so much as, you know, whether the corporation implemented a policy in such a way that the acts of the managers that would otherwise impute liability for punitive damages were contrary to those acts. And to be sure, it is confusing, you know, to sort of meld the two. But I think here it really turns on the standard of review because the burden was on the defendant to establish the good faith defense. And there were plenty of facts that would undermine the sincerity of AutoZone's implementation of its policy here. You know, this court has made clear that the mere existence of a policy is not enough. And the Supreme Court, when it was talking about the good faith defense, didn't mean you just have a written policy and you make half-hearted attempts to, you know, do some occasional training. It was a more strenuous thing. So I could talk about the reckless indifference standard. I know I'm out of time. I would like to. Thank you very much for your argument. Thank you. All right, Ms. Kern, you have some rebuttal time. Thank you, Your Honors. Just following up on the questions that were put to Ms. Holding with regard to double recovery, I would point the court to the Wallia case and the record evidence. The Wallia prohibited double recovery and specifically found in that case, as is here, that there was no testimony developed at trial distinguishing the emotional distress damages that were attributable to the sexual harassment and the emotional distress damages attributed to the IIED claim. So for that reason, we do believe that it is double recovery. With regard to the punitive damages, and there seems to be, Judge Quattlebaum, you had to ask some questions about the... Tell us which, because I think there's a differentiation between the Title VII punitives and the state law punitives. Yes. So which one are you going to? I'm talking about the Title VII right now. So there is, and maybe there's a miscommunication, but you seem to have a concern about was there a different level of conduct required to award punitive damages under Title VII versus to having a finding of liability for compensatory damages under Title VII. Am I correct? Well, yeah. I'd ask questions to follow up on Judge Agee's point. Is there any daylight between liability and punitive damages, and if so, articulate what that is. And there clearly is. First of all, they are two different sets of damages, and I would point the court to the Lavelle case, and that's cited in our brief. It's actually a Tenth Circuit case, but it does state that the plaintiff must meet a higher burden than that which is required to show that he's entitled to compensatory damages. So there will be circumstances where intentional discrimination does not give rise to punitive damages liability. I'd also point the court to the EEOC versus Dillard's case, which again talks about a higher standard for punitive damages, which makes sense, because if there wasn't a differentiation, then there would be no different, there would be one damage. And I certainly understand that, but I'm trying to go beyond that general proposition that there are different damages and there's a general higher standard. The statute makes it clear that you must show malice or reckless indifference. Yes. But it defines that, and I don't want to go back into that, because Colstead pretty much limits that, it seems to me, to whether you could reasonably have believed the conduct would be a violation of federal rights, and you've already conceded that this type of conduct people at AutoZone knew could be that. So beyond that, is there any, and beyond the intent, because intent is required, are those the two things that are the higher level of proofs that are required beyond negligence? That is, Your Honor, the higher level of proofs, but then you also have to factor in the affirmative defense of the good faith efforts to comply. Yes. Does the court have any other questions or concerns? Thank you very much. Thank you. And I'm just holding, you've got two minutes, but that would be, I think, limited to the cross appeal. Is there anything further on that that you would have to tell us? No, Your Honor. As far as the constructive discourage claim, I think we've covered that, and we do have a conditional cross appeal if the court were to vacate the compensatory or punitive damages award. If I could briefly ask that. Yeah, go ahead. Give us a minute or so on that. Well, it's essentially, it's related in some ways to the double recovery issue, and I don't want to overstep what I'm permitted to get into on my rebuttal. But I did want to mention that there's really no explanation by AutoZone for its request to have the intentional infliction compensatory award vacated. That's the higher award. It's $150,000. There's just simply no justification to do that, even if they were correct, which we don't believe they are. The district court denied our cross motion and the alternative as moot. So I think the more appropriate remedy, if the court were to even reach our conditional cross appeal, which we don't believe we should have to, would be to actually remand that to the district court for decision. And with that, unless the court has other questions, I thank you very much for your Thank you. Thank you very much. We're going to come down and greet counsel and move on to our next case.
judges: G. Steven Agee, Henry F. Floyd, A. Marvin Quattlebaum Jr.